UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JOAN ZIMMELMAN,                                          :

                Plaintiff,                 :          08 Civ. 6958 (DAB) (DF)

  -against-                                              :

TEACHERS' RETIREMENT SYSTEM OF THE    :          **REPORT AND**
CITY OF NEW YORK, et al.,                                            **RECOMMENDATION**
                                     :
                Defendants.
--------------------------------------------------------------X

**TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

       *Pro se* plaintiff Joan Zimmelman ("Plaintiff"), a former teacher in the New York City

public schools, brings this action against the Teachers' Retirement System of the City of New

York (the "TRS"), the Department of Education of the City of New York (the "DOE")

(collectively, the "City Defendants"), and the Insurance Department of the State of New York

(the "NYSID") (all, collectively, "Defendants"), claiming that the failure of these entities to

correct alleged errors in the calculation of her retirement benefits violates several federal and state

statutes.[1]  Currently before the Court are Defendants' motions to dismiss the Amended Complaint

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

       For the reasons discussed herein, I recommend that the dismissal motions filed by both the

City Defendants (Dkt. 9) and the NYSID (Dkt. 10) be granted in their entirety.

---

[1] Plaintiff purports to sue under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e *et seq*. ("Title VII"), the Americans with Disabilities Act, 42 § U.S.C. 12101, *et seq.*
(the "ADA"), the Equal Pay Act of 1963, 29 U.S.C. § 206, *et. seq.* (the "Equal Pay Act"), the
14th Amendment, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*
(the "NYCHRL"), the New York State Human Rights Law, N.Y. State Exec. Law § 290 *et seq.*
("NYSHRL")*,* and New York State Labor Law, N.Y. Lab. Law § 195.5, and also arguably
asserts a state tort claim against the TRS for intentional infliction of emotional distress.

## BACKGROUND[2]

**A.    Factual Background**

**1.    Plaintiff's Employment with the DOE and Its Predecessor, the Board of Education of the City of New York (the "BOE")**

Plaintiff is a retired New York City schoolteacher and "Tier I" member of the TRS. (*See* Amended Complaint, dated Nov. 26, 2008 ("Am. Compl.") (Dkt. 3).) In September 1969, Plaintiff began her employment with the BOE,[3] as a teacher of Early Childhood Education. (*Id.* at ¶ 26.) Plaintiff taught kindergarten classes for approximately eight years and worked as a special cluster teacher for two years. (*Id.* at ¶ 28.) She also worked in the BOE's summer school and after-school programs. (*Id.* at ¶ 29.)

In 1979, Plaintiff learned that she was pregnant. (*Id.* at ¶ 31.) She applied for and was granted a maternity leave of absence, in accordance with then-existing BOE regulations. (*See id.* at ¶ 45.) While on maternity leave, Plaintiff became pregnant with her second child and applied for a second consecutive maternity leave. (*Id.* at ¶¶ 43-44.) While on her second maternity leave, Plaintiff became pregnant a third time and again applied for additional maternity/child care leave. (*Id.* at ¶¶ 50-51.) Plaintiff also applied for two separate leaves of absence for child care, from September 6, 1988 to August 31, 1990. (*Id.* at ¶ 83.)

---

[2] The facts set forth herein are taken from Plaintiff's Amended Complaint and documents referred to therein. The Court may consider materials outside the pleadings, where, as here, the pleadings rely upon such materials and incorporate them by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Sudler v. City of New York*, No. 08 Civ. 11389 (GBD) (AJP), 2010 U.S. Dist. LEXIS 1566, at *16-17 (S.D.N.Y. Jan. 8, 2010).

[3] As the result of a reorganization, the DOE replaced the BOE as Plaintiff's employer, effective July 1, 2002. (*See* 2002 N.Y. Consol. Laws Adv. Legis. Serv. 13356.)

At some point during her maternity and/or child care leaves, Plaintiff's mother's health declined, and Plaintiff became her sole caregiver.  (*Id.* at ¶ 62.)  In light of her mother's condition, Plaintiff applied for subsequent leaves of absence to care for her mother; these requested leaves of absence were granted for the period from September 1990 to September 1998.  (*Id.* at ¶¶ 65, 83.)

In the spring of 1998, before the expiration of her last leave of absence to care for a sick family member, Plaintiff was herself diagnosed with breast cancer.  (*Id.* at ¶ 71.)  In connection with her own treatments, Plaintiff, applied for and was granted a leave of absence from September 1998 to September 1999, for the restoration of her health.  (*See id.* at ¶¶ 76-77.)  In August 1999, at approximately the close of that leave of absence, and due to her medical condition, Plaintiff was granted an ordinary disability retirement.  (*Id.* at ¶¶ 79-80, 85.)[4]

In sum, Plaintiff's approved leaves of absence were as follows:

| Date | Reason |
|---|---|
| October 12, 1979-September 1, 1984 | Maternity |
| September 2, 1984-September 5, 1988 | Maternity |
| September 6, 1988 - September 5, 1989 | Child Care |
| September 6, 1989 - August 31, 1990 | Child Care |
| September 1, 1990 - August 31, 1991 | Sick Family Member |
| September 1, 1991 - September 7, 1994 | Sick Family Member |
| September 8, 1994 - September 4, 1995 | Sick Family Member |
| September 9, 1995 - September 2, 1996 | Sick Family Member |
| September 3, 1996 - September 1, 1997 | Sick Family Member |
| September 2, 1997 - September 7, 1998 | Sick Family Member |
| September 8, 1998 - September 6, 1999 | Restoration of Health |

---

[4] It also appears that BOE granted Plaintiff an additional leave from September 1999 to September 2000 (*see id.* at ¶ 78), although Plaintiff's retirement in 1999 renders this last approved leave irrelevant to her claims.

(*Id.* at ¶ 83.)  According to Plaintiff, her leaves of absence for maternity, child care and other types of family care were unpaid.  (*See id.*, at ¶¶ 65, 209.)

### 2. Plaintiff's Complaints to the TRS

Upon her retirement, Plaintiff began to receive retirement benefits.  (*Id.* at ¶ 252.) Several months later, Plaintiff received a letter from the TRS, dated May 11, 2000, explaining how her retirement benefits were being calculated.  (*See id.* at ¶ 251; *see* Plaintiff's Memorandum of Law in Opposition to Defendants TRS and DOE's Motion to Dismiss the Complaint, dated Mar. 30, 2009 ("Pl. Opp. Mem. 1") (Dkt. 14), Ex. 4 (letter to Plaintiff from Donald Miller, Executive Director of the TRS, dated May 11, 2000).)[5]  A few months after receiving this letter, Plaintiff "noted some discrepancies" (Am. Compl., at ¶ 252), and she then contacted the TRS on multiple occasions, challenging its calculation of her benefits.

Among other things, Plaintiff asserted that the TRS (1) had failed to award her service credit for her maternity and "sick family member" leaves, and (2) had incorrectly calculated her benefits by basing them on the teacher's salary that was in effect seven years from the last date that she had actually worked (*i.e.*, in 1986), as opposed to the salary in effect one year prior to her retirement (*i.e.*, in 1998), as she claimed was required by the applicable regulations.[6]  (*See id.*

---

[5] According to the City Defendants, Plaintiff was also provided with a letter from the TRS in 1998, outlining her accredited service of 10 years, one month and nine days.  (*See* Declaration of Karen J. Seemen, Esq., in Support of Defendants' Motion to Dismiss the Amended Complaint, dated Jan. 30, 2009 ("Seeman Decl.") (attached to Defendants' Notice of Motion to Dismiss the Amended Complaint, dated Jan. 30, 2009 ("City Defendants' Motion") (Dkt. 9)), Ex. A (Letter from TRS to Plaintiff dated Aug. 27, 1998).)

[6] Plaintiff also apparently contacted the TRS regarding other problems with her benefits, such as incorrect deductions, but those errors were later corrected and are not at issue here.  (*See e.g.,* Am. Compl., at ¶¶ 220-24; 226-29; 231-33; 235; *see* Pl. Opp. Mem. 1, Ex. 5 (attaching letters to Plaintiff from the TRS dated Apr. 4, 2001, June 10, 2003, Aug 9, 2005 and Nov. 1, 2005).)

at ¶¶ 97-100; 106-07; 109; 118-19; *see* Pl. Opp. Mem. 1, Ex. 1 (letter to Plaintiff from Tom

Gunn dated Dec. 11, 2006); Ex. 10 (attaching letters to Plaintiff from the TRS dated Mar. 16,

2004 and Dec. 13, 2005).)

Plaintiff states that, after she initially raised her concerns, the TRS sent her several

revised benefits letters (*id.* at ¶ 230; *see* Seeman Decl., Ex C (letter to Plaintiff from Cynthia

McDermott dated Dec. 20, 2000, enclosing Oct. 20, 2000 benefits letter)), which made minor

adjustments to her benefits calculations – including changing the salary used to calculate her

benefits to the one in effect seven years (*i.e.,* in 1986), as opposed to five years (*i.e.,* in 1984),

from her last actual work date.  (*See* Seeman Decl., Ex. D (letter to Plaintiff from JoAnne

Lennon dated Aug. 29, 2001).)[7]  In its correspondence to Plaintiff, the TRS apologized for what

it conceded were prior incorrect benefits payments (*see id.* at ¶¶ 231-35), but stated several times

that Plaintiff's final average salary calculation was "fair and consistent with TRS procedures for

those similarly situated" (s*ee* Pl. Opp. Mem. 1, Ex 10 (letter to Plaintiff from Tom Gunn, dated

Mar. 16, 2004)).  Plaintiff claims, however, that the TRS failed to rectify fully the two

fundamental problems that she perceived with respect to its computation of her benefits.  (*See*

Am. Compl., at ¶¶ 9-11.)

### 3.    Plaintiff's Complaint to the NYSID

On or about October 2004, Plaintiff wrote to the NYSID, requesting a review of the

TRS's calculation of her retirement benefits.  (*Id.* at ¶ 281.)  By letter dated December 4, 2006,

Michael J. Lambert ("Lambert"), Supervising Actuary, informed Plaintiff that the NYSID had

---

[7] According to Plaintiff, New York City Administrative Code Section 13-506 was
amended in 1998 to extend the time period a TRS member may retain pension membership
following cessation of employment to seven school years.  (*See* Am. Compl., at ¶ 109; N.Y.C.
Admin. Code § 13-506.)

completed its review of her complaints and concluded that the benefits she was receiving from

TRS were correct, and that, "while mistakes had been made earlier, appropriate adjustments had

been made." (*See id.* at ¶ 19; Pl. Opp. Mem. 1, Ex. 8 (letter from Michael J. Lambert to Plaintiff,

dated Dec. 4, 2006).) Lambert further stated, "I can assure you that the [NYSID] and [TRS]

have investigated all relevant issues thoroughly, and we are confident that this resolution is

correct." (Pl. Opp. Mem. 1, Ex. 8.)

Believing Lambert's conclusions were flawed, Plaintiff wrote several additional letters to

the NYSID in 2007, requesting an explanation of his determinations, but she received no

responses. (Am. Compl., at ¶¶ 21-22; 283.) Plaintiff also made a demand to the NYSID under

the New York State Freedom of Information Law ("FOIL") for production of "all records" used

in reviewing her retirement benefits. (*Id.* at ¶ 289.) According to Plaintiff, the NYSID's

response to her FOIL request did not include certain documents pertinent to the calculation of

her benefits. (*Id.*, at ¶¶ 294-97, 316.)

**B.**    **Procedural History**

**1.**    **Plaintiff's Administrative Filings**

On June 5, 2007, Plaintiff filed a complaint against the TRS with the New York State

Division of Human Rights ("NYSDHR"),[8] alleging employment discrimination on the basis of

disability, sex, marital status and pregnancy, in violation of Article 15 of the NYSHRL, the

ADA, and Title VII. (*See* Seeman Decl., Ex. E (Verified Complaint, in *Zimmelman v. Teachers

Retirement System of the City of New York*, Case No. 10118542, Federal Charge No.

---

[8] Plaintiff's administrative complaint authorized the NYSDHR to accept her complaint on
behalf of the federal Equal Employment Opportunity Commission ("EEOC"). (NYSDHR
Compl., at 6.)

16GA703658, dated June 5, 2007 ("NYSDHR Compl.")).)  Specifically, Plaintiff claimed that the TRS did not properly calculate her retirement benefits, in that it failed to base her final average salary on the salary earnable during the 12 months preceding her retirement, and it failed to grant her service credit for her medical, maternity and family leaves.  (*Id.* at 3-6.)

The TRS filed a response denying the charges and contending that the NYSDHR lacked jurisdiction and that the charges were untimely and without merit.  (*See* Pl. Opp. Mem. 1, Ex. 2 (TRS Response to Complaint, *Zimmelman v. Teachers Retirement System of the City of New York*, Case No. 10118542).)  With respect to its alleged failure to grant service credit for Plaintiff's leaves, the TRS stated that it "cannot award service credit unilaterally but can only do so on the recommendation of [Plaintiff's] employer."  (*Id.*)

Upon completion of its investigation, the NYSDHR dismissed Plaintiff's complaint, finding that the agency lacked jurisdiction because "the parties were not engaged in an employment relationship pursuant to the Human Rights Law."  (*See* Seeman Decl., Ex. G (NYSDHR Determination and Order After Investigation, Case No. 101158542, dated Mar. 11, 2008), at 1.)  The EEOC similarly dismissed Plaintiff's charges, stating that there was no employer/employee relationship between the TRS and Plaintiff, and also finding that Plaintiff had not timely filed her EEOC charge.  (*See* Dismissal and Notice of Rights, dated May 8, 2008, attached to Am. Compl.)  On May 8, 2008, the EEOC issued Plaintiff a "right to sue" letter. (*See id*.)

### 2.   **Plaintiff's Federal Lawsuit**

Plaintiff commenced this action against the DOE, the TRS, and the NYSID on August 5, 2008 (Dkt. 1) and filed an Amended Complaint on November 26, 2008 (Dkt. 3).  She alleges that

the TRS discriminated against her on the basis of sex, marital status, maternity status and disability, in violation of Title VII, the ADA, the Equal Pay Act, and the 14th Amendment, by using an incorrect salary figure to calculate her retirement benefits and by refusing to grant her service credit for her maternity and child care leaves of absence.  (*See generally*, Am. Compl.) Plaintiff further claims that TRS retaliated against her for exercising her rights in violation of the NYCHRL.  ( *Id.*)  In addition, Plaintiff alleges that the DOE discriminated against her by forcing her to take maternity leave, in violation of Article 15 of the NYSHRL, and that it violated Section 195.5 of the New York State Labor Law, by failing to provide written notice of its leave policies.  (*See id.*)  As against the NYSID, Plaintiff claims that the department failed to conduct an adequate investigation of her claims regarding her retirement benefits and also that it provided her with an  incomplete FOIL response.  (*See* Am. Compl, at ¶¶ 294-97; 316).  Lastly, Plaintiff makes a general claim that all of the Defendants somehow colluded to deny her appropriate retirement benefits.  (*Id.* at ¶¶ 137, 188, 194, 321.)

Plaintiff requests the following relief:  (1) that her retirement benefits, going forward, be calculated based on (a) the teaching salary earnable in 1998, the year immediately preceding her retirement, and (b) full service credit for her maternity leaves of absence; (2) that her benefits also be recalculated retroactively, and that she receive an award of past-due benefits at the standard TRS interest rate of eight percent; (3) that she be awarded $500,000 in punitive damages, together with an additional sum of money to cover "tax burdens" purportedly imposed by the TRS for failure to issue payments during the proper years, and all of her costs associated with this action; and (4) that the Court enjoin Defendants from retaliating against her.  (*See* Am. Compl., at 53.)

3.    **Motions Before the Court**

On January 30, 2009, the City Defendants and the NYSID filed motions to dismiss the Amended Complaint (*see* City Defendants' Motion; *see also* [NYSID's] Notice of Motion to Dismiss [Amended] Complaint, dated Jan. 30, 2009 (Dkt. 10)), arguing that the Court should dismiss Plaintiff's claims for lack of subject matter jurisdiction, or because the claims are time-barred and/or without merit.  On March 30, 2009, Plaintiff filed papers in opposition to both motions.  (*See* Affirmation in Opposition to Defendants' [TRS and DOE] Motion to Dismiss the Complaint, dated Mar. 30, 2009 (Dkt. 13); Notice of Motion, dated Mar. 30, 2009 ("Pl. Notice of Mot.") (Dkt. 15).)  On April 30, 2009, both the City Defendants and the NYSID filed replies.  (*See* Reply Memorandum of Law in Further Support of the City Defendants' Motion to Dismiss the Amended Complaint, dated Apr. 30, 2009 ("City Def. Reply Mem.") (Dkt. 16); NYSID Reply Memorandum of Law in Support of Motion to Dismiss, dated Apr. 30, 2009 ("NYSID Reply Mem.") (Dkt. 17).)

**DISCUSSION**

I.    **APPLICABLE LEGAL STANDARDS**

A.    **Rule 12(b)**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure if the Court lacks the statutory or constitutional power to adjudicate it.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  "As a general rule, a court lacks jurisdiction to hear a civil action against a party that was not already named in an EEOC charge."  *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 389 (S.D.N.Y. 2002) (Title VII); *Johnson v. Palma,*

931 F.2d 203, 209 (2d Cir. 1991); *Zustovich v. Harvard Maint., Inc.*, No. 08 Civ. 6856 (HB),

2009 U.S. Dist. LEXIS 22640, at *23 (S.D.N.Y. Mar. 20, 2009); *Zheng v. Wong*, No. 07 Civ.

4768 (FB) (JO), 2009 U.S. Dist. LEXIS 74891, at *9 (E.D.N.Y. Aug. 24, 2009) (noting that "this

requirement is jurisdictional") (internal citation omitted); *Cabrera v. New York City*, No. 04 Civ.

2688 (RWS), 2004 U.S. Dist. LEXIS 18402, at*13 (S.D.N.Y. Sept. 13, 2004) (collecting cases).

When a complaint is challenged pursuant to Rule 12(b)(1), for lack of subject matter

jurisdiction, the district court must accept factual allegations as true, drawing reasonable

inferences in favor of the plaintiff. *See Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003). A

court may, however, consider evidence outside the pleadings. *See J.S. ex rel. N.S. v. Attica Cent.*

*Schs.*, 386 F.3d 107, 110 (2d Cir. 2004); *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006,

1011 (2d Cir. 1986). The burden of proof is on the plaintiff to prove the existence of subject

matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys.,*

*Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *see Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*,

82 F.3d 560, 562 (2d Cir. 1996)).

"Filing of a timely charge of discrimination with the EEOC is not a jurisdictional

prerequisite to suit in federal court, but [rather] a requirement that, like a statute of limitations, is

subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S.

385, 393 (1982); *see also Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) (noting that in

the employment discrimination context "'the exhaustion requirement, while weighty, is not

jurisdictional.'") (internal citation omitted). Thus, a motion to dismiss on the basis that a

plaintiff failed to file a *timely* administrative charge is analyzed under Federal Rule of Civil

Procedure 12(b)(6), which generally governs motions to dismiss for failure to plead within the

10

applicable statute of limitations.  *See Arnold v. 1199 SEIU*, 09 Civ. 5576 (DLC), 2009 U.S. Dist. LEXIS 116579, at \*13-14 (S.D.N.Y. Dec. 15, 2009); *Garner v. DII Indus., LLC*, No. 09 Civ. 6191 (CJS), 2010 U.S. Dist. LEXIS 9583 at \*4 (W.D.N.Y. Feb. 4, 2010) *see also Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).  Rule 12(b)(6) also applies to motions to dismiss for any other failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  Further, "'[a]lthough a court should generally refrain from considering matters outside the pleadings when reviewing a 12(b)(6) motion to dismiss, the mandate to liberally construe *pro se* pleadings makes it appropriate to consider the facts set forth in plaintiff's opposition papers.'" *Falso v. Gates Chili Cent. Sch. Dist.,* No. 09 Civ. 6053L, 2010 U.S. Dist. LEXIS 6233, at \*3-4 (W.D.N.Y. Jan. 26, 2010) (citing *Acheampong v. United States*, Nos. 99 Civ. 2169 (SWK), 99 Civ. 3491 (SWK), 2000 U.S. Dist. LEXIS 12775, at \*11 (S.D.N.Y. Sept. 5, 2000)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (noting that "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest'" (collecting authority)).

Nonetheless, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted); *Smith v. Local 819 I.B.T.*

*Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).  In addition, even plaintiffs who are proceeding *pro se* must comply with any relevant procedural and substantive rules, and, to survive a motion to dismiss, a *pro se* complaint, like any other complaint, must plead enough facts "'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416, 2008 U.S. App. LEXIS 23977, at *2 (2d Cir. Nov. 20, 2008).  In other words, a plaintiff is required to amplify a claim with some factual allegations so as to allow the Court to draw the reasonable inference that the defendant is liable for the alleged conduct.  *Iqbal*, 129 S. Ct. 1937 at 1949.

## II.   THE CITY DEFENDANTS' MOTION TO DISMISS

### A.   Plaintiff's Federal Claims

#### 1.   Plaintiff's Title VII and ADA Claims Against the City Defendants Are Unexhausted and/or Time-Barred.

The City Defendants argue in their motion that Plaintiff's federal claims claims of sex, marital status, maternity status, and disability discrimination under Title VII and the ADA should be dismissed because, to the extent Plaintiff asserts claims against the DOE, Plaintiff never filed an administrative complaint with the NYSDHR or the EEOC, and because, with respect to the TRS, although she did file an administrative complaint, it was untimely.  (*See* Memorandum of Law in Support of Defendants TRS and DOE's Motion to Dismiss the Amended Complaint, dated Jan. 30, 2009 ("City Def. Mem.") (Dkt. 8), at 7-9, 10.)

In response, Plaintiff makes several arguments.  As to her lack of exhaustion of her claim against the DOE, she argues that the close relationship between the DOE and the TRS should render her administrative filing as against the TRS sufficient to have covered both entities.  (Pl.

Opp. Mem. 1, at 3-4.)  As to the issue of timeliness, she argues that the 300-day period in which

she was required to assert her Title VII and ADA claims should not be found to have

commenced until December 4, 2006, the date of the NYSID letter that, as she characterizes it,

informed her of a "final determination" of her retirement benefits.  (*See id.* at 7.)  She further

argues that tolling provisions of the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act") should

be held to apply to her retirement benefits claim, such that, each time she received any

miscalculated pension payments, the statute of limitations was reset.  (*See id.* at 4-5, 7.)

Alternatively, Plaintiff argues that she is entitled to equitable tolling of the statute of limitations

because the City Defendants intentionally misled her with regard to both her final average salary

and service credit.  (*Id.* at 5-6, 7.)

a.  **Plaintiff's Failure To Exhaust Her<br>Discrimination Claims Against the DOE**

Plaintiff does not dispute that the only discrimination complaint that she filed

administratively did not name the DOE.  Instead, Plaintiff argues that the DOE is closely related

to the TRS and "cannot be separated as to responsibility in this legal dispute."  (Pl. Opp. Mem. 1,

at 3.)

Failure to file an administrative complaint may be excused in instances "where there is a

clear identity of interest between the unnamed defendant and the party named in the

administrative charge."  *Johnson*, 931 F.2d at 209.  Where a plaintiff does not name a defendant

in her administrative complaint filed with the EEOC, courts consider four factors in determining

whether the requisite identity of interest is present:  (1) whether the role of the unnamed party

could, through reasonable effort by the complainant, have been ascertained at the time of the

filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named

party are so similar to that of the unnamed party that, for the purpose of obtaining voluntary conciliation and compliance, it would have been unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant was to be through the named party.  *See id.* at 209-10.

Here, Plaintiff alleges that two of the seven TRS board members serve on the DOE's board of education, which in turn sets the policies for leaves of absence and service credit.  (*See* Pl. Opp.Mem. 1, at 3-4; (citing N.Y.C. Admin. Code § 13-507).)[9]  According to Plaintiff, the supposed "joint membership" between the two boards "conclusively demonstrates that TRS and DOE are inextricably joined, creating a direct conflict of interest."  (*Id.* at 4.)  As the DOE argues, however (*see* City Def. Reply Mem., at 3-4), Plaintiff has not demonstrated that, based on the four factors specified above, the "clear identity of interest" exception to the administrative filing requirements should apply in this case.

As to the first factor, Plaintiff was plainly aware of the DOE's role as her employer, as she sought permission from the DOE to take her leaves of absence.  (*See*, *e.g.* Am. Compl. at ¶ 200-01.)  Moreover, as the DOE points out, Plaintiff was aware that the DOE had provided the information regarding her years of service to the TRS.  (*See* City Def. Reply Mem., at 5 (citing Seeman Decl., Exs. B,C, D).)

---

[9] N.Y.C. Admin. Code § 13-507 provides that TRS's board is required to consist of two members of DOE's board of education:  the president of the board of education and one board member, appointed by the mayor.

Second, the interests of the TRS and the DOE are not so similar that it would have been unnecessary for Plaintiff to have included the DOE in her administrative complaint.  While the DOE acknowledges that two of its board members serve as trustees of the TRS (City Def. Reply Mem., at 4 n.3), it argues nonetheless that the DOE and the TRS are separate and distinct entities, with different purposes and management systems (*id.* at 4).  The Court takes judicial notice of the provisions of the New York State law and New York City Administrative Code, which provide that the TRS administers retirement benefits to employees of the DOE, as well as to employees of the City University of New York and participating New York City Charter Schools, whereas the DOE is the entity that oversees the operation of New York City public school system.  *See* N.Y. Educ. Law § 2590-b(1), and N.Y.C. Admin. Code §§ 13-501, 13-505, 13-511 and 13-563.[10]  Based on this, it is not apparent that the TRS and the DOE would have clearly intertwined interests.

While the third factor weighs in Plaintiff's favor, as the DOE was not prejudiced by the EEOC proceedings (given the dismissal of Plaintiff's complaint), the fourth factor again weighs against her, as nothing in the record suggests that the DOE ever represented to her that their relationship was to be through the TRS.  (*See* Am. Compl.; Pl. Opp. Mem. 1, Exs 1, 4, 5, 10 (attaching correspondence from the TRS to Plaintiff).)

---

[10] A court may take judicial notice of relevant statutory materials on a motion to dismiss. *See Castellano v. Bd. of Trs. of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 754 (2d Cir. 1991) (taking judicial notice of statutory material on a motion to dismiss), *cert. denied*, 502 U.S. 941 (1991); *see also New York 10-13 Ass'n v. City of New York*, No. 98 Civ. 1425 (JGK), 1999 U.S. Dist. LEXIS 3733 at *13-14 (S.D.N.Y. Mar. 29, 1999) (taking judicial notice of relevant statutes and legislative history).

Accordingly, I recommend that Plaintiff's Title VII and ADA claims against the DOE be dismissed pursuant to 12(b)(1) for failure to exhaust those claims administratively. *Wong*, 2009 U.S. Dist. LEXIS 74891, at *13-14; *Cabrera*, 2004 U.S. Dist. LEXIS 18402, at*17-20.

### b.    Plaintiff's Untimely Filing of Her EEOC Charge Against the TRS

As to Plaintiff's Title VII and ADA claims against the TRS, the TRS argues that Plaintiff's claims should be dismissed as time-barred because Plaintiff failed to file her administrative complaint on a timely basis.  (City Def. Mem., at 8.)

In New York State, a plaintiff may assert Title VII and ADA claims in federal court only if he or she has filed a complaint with the NYSDHR or the EEOC within 300 days of the alleged discrimination.  *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); *Nat'l R.R. Passenger Corp. ("AMTRAK") v. Morgan*, 536 U.S. 101, 109 (2002); *Nicoletti v. N.Y. Dep't of Educ. Office of Legal Servs.*, No. 08 Civ. 11305 (WHP), 2009 U.S. Dist. LEXIS 114982, at *5 (S.D.N.Y. Dec. 7, 2009).[11]  A claim for employment discrimination begins to accrue on the date the allegedly discriminatory decision was made and communicated to the employee.  *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Morehead v. N.Y. City Transit Auth.*, 385 F. Supp. 2d 248, 251 (S.D.N.Y. 2005) (stating that  "[t]he 300 day period starts to run when the claimant receives notice of the allegedly discriminatory act, not when the allegedly discriminatory decision takes effect").  Courts strictly adhere to the 300-day statute of limitations.  *AMTRAK*, 536 U.S. at 114; *Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.3d 1397, 1401 (2d Cir. 1993).

---

[11] *See also Harris v. City of New York,* 186 F.3d 243, 247 n.2 (2d Cir. 1999) (holding that the existence of the State Division of Human Rights "makes New York a so-called deferral state for Title VII . . . purposes," and thus the 300-day rule applies); *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996) (same).

In this case, Plaintiff's claims appear to be based on conduct that occurred more than 300 days before she filed her administrative complaint on June 5, 2007.  Accordingly, Plaintiff's claims alleging discrimination in violation of Title VII or the ADA would generally be time-barred and should be dismissed, unless Plaintiff can demonstrate grounds for overcoming the restriction imposed by the 300-day filing period.

### i.     The NYSID's December 4, 2006 Letter To Plaintiff Cannot Be Deemed a "Final Determination" for Statute of Limitations Purposes.

Plaintiff first argues that the 300-day limitations period should run from December 4, 2006, the date of the letter she received from the NYSID, confirming the TRS's calculations of her final average salary and service credit.  (Pl. Opp. Mem. 1, at 6-7.)  As she filed her administrative complaint on June 5, 2007, within 300 days of that date, she contends that her filing was timely.  (*Id.*)  According to the TRS, however, the NYSID's review did not constitute a "'final determination,'" but rather was an "unofficial 'appeal,'" which did not operate to toll the 300-day period.  (City Def. Reply Mem., at 6.)   The TRS further argues that an employment discrimination claim accrues for statute of limitations purposes on the date when the employee learns of the employer's allegedly discriminatory conduct.  (*Id.*)

The TRS has the better argument, as "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period[]." *Ricks*, 449 U.S. at 261 (citing *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)); *Syrkin v. State Univ. of N.Y.*, No. 04 CV 4336 (FB) (RML), 2005 U.S. Dist. LEXIS 21710, at *17 (E.D.N.Y. Sept. 29, 2005); *Joseph v. N.Y. City Bd. of Educ.*, 171 F.3d 87, 91 (2d Cir. 1999).  A "grievance procedure, by its very nature, is a remedy for a prior decision, not an

opportunity to influence that decision before it is made." *Ricks*, 449 U.S. at 261. In this case, by requesting that the NYSID review the TRS's determination of her retirement benefits, Plaintiff was seeking to alter a decision that had already been made. (S*ee* Pl. Opp. Mem. 1, Ex 10 (Letter to Plaintiff from Tom Gunn, dated Mar. 16, 2004.) Even if the Court were to consider Plaintiff's claim to have accrued as of August 18, 2003, the date of the last letter she claims to have received from the TRS itself (*see* Am. Compl, at ¶ 230), Plaintiff's administrative complaint would still have been filed well outside the 300-day period and thus would still be untimely.

### ii.     Plaintiff Cannot Avoid the Statute of Limitations by Reference To the Fair Pay Act.

Plaintiff's also argues that the Fair Pay Act should be construed to have "reset" the statute of limitations on her federal discrimination claims each time she received a payment of retirement benefits. (*See* Pl. Opp. Mem. 1, at 4-6.) The TRS contends that this argument is misplaced and inconsistent with Congressional intent. (*See* City Def. Reply Mem., at 4-5.)

The Fair Pay Act, enacted in January 2009, amended Title VII, the ADA and other anti-discrimination statutes by providing that an unlawful employment practice with respect to compensation occurs each time an individual is affected by a discriminatory compensation decision, including each time wages or other workplace compensation is paid. *See* Pub. L. No. 111-2; 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a). The Act applies to all claims pending on or after May 28, 2007, but it expressly states that "[n]othing in this Act is intended to change current law treatment of when pension distributions are considered paid." *See* Pub. L. No. 111-2, § 2(4).

Moreover, as the TRS notes (*see* City Def. Reply Mem., at 5), the legislative history of the statute supports differentiating between wage-based claims and claims based on pension

18

payments, for purposes of the statute-of-limitations analysis.  The relevant Congressional report, H.R. Rep. No. 110-237 (2007), cites *Florida v. Long*, 487 U.S. 223 (1988), in which the Supreme Court distinguished between pension and paycheck cases, finding that "[i]n a salary case[,] . . . each week's paycheck is compensation for work presently performed[,]" while "a pension plan . . . provides benefits fixed under a contract between the employer and retiree based on a past assessment of an employee's expected years of service, date of retirement [and] average final salary," *id.* at 239.  To date, the Second Circuit has not addressed the question of whether the Fair Pay Act may nonetheless be read to cover pension claims, but at least one court has specifically found that "[t]he [Fair Pay] Act preserves the existing law concerning when a discriminatory pension distribution or payment occurs, *i.e.*, upon retirement, not upon the issuance of each check."  *Tomlinson v. El Paso Corp.*, No. 04 Civ. 02686 (WDM)(MEH), 2009 U.S. Dist. LEXIS 77341, at *9 (D. Colo. Aug. 28, 2009) (relying on the Fair Pay Act's legislative history and *Florida v. Long,* 487 U.S. 223 (1988)).

In light of the language of the statute itself, the legislative history, and the only available case law on the question to date, it would be difficult to conclude that each of Plaintiff's monthly retirement benefit payments should be considered a new, allegedly discriminatory action that reset the 300-day filing period.   Based on this precedent, it appears that Plaintiff's Title VII and ADA claims against the TRS were not timely filed.

### iii.    Plaintiff Is Not Entitled To Equitable Tolling.

Plaintiff finally argues that the statute of limitations governing her discrimination claims against the TRS should be equitably tolled.  (Pl. Opp. Mem. 1, at 5, 7.)  Yet equitable tolling of the administrative filing period is warranted only in "rare and exceptional circumstances . . . in

which a party is prevented in some extraordinary way from exercising [her] rights."

*Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations

and citations omitted).  "When determining whether equitable tolling is applicable, a district

court must consider whether the person seeking application of the equitable tolling doctrine

(1) has acted with reasonable diligence during the time period she seeks to have tolled, and

(2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Id.*, at

81 (internal citation omitted); *see also Shih v. City of New York*, No. 03 Civ. 8279 (LAP), 2006

U.S. Dist. LEXIS 70483, at *5 (S.D.N.Y. Sept. 27, 2006).  "The burden of demonstrating the

appropriateness of equitable tolling . . . lies with the plaintiff."  *Boos v. Runyon*, 201 F.3d 178,

184-85 (2d Cir. 2000).  "Pro se filings, although held to more lenient standards, are not excused

from establishing these elements."  *Arias-Mieses v. CSX Transp., Inc.*, 630 F. Supp. 2d 328, 333

(S.D.N.Y. 2009) (citing *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (applying general

equitable tolling principles against *pro se* litigant)).

  In this instance, Plaintiff argues that she is entitled to equitable tolling because, in her

view, the City Defendants intentionally misled her regarding her final average salary and service

credit, by "obscur[ing] official policies."  (*See* Amended Compl., at ¶¶ 195-200, 203, 205; Pl.

Opp. Mem. 1, at 7.)  The TRS, however, asserts that it did not mislead Plaintiff, as it notified her

several times as to the calculation of her final average salary and service credit – on August 27,

1998, May 11, 2000, and December 20, 2000.  (*See* City Def. Reply Mem., at 5; *see also* Pl.

Opp. Mem. 1, Exs. 1, 4, 5, 10 (attaching correspondence from TRS to Plaintiff).)

  Not only has the TRS placed these letters before the Court, but Plaintiff has pointed to no

misstatements on the part of the TRS that could have misled her with regard to how it calculated

20

her final average salary and years of service.  Nor has she described any particular action by the City Defendants, separately or together, that could be characterized as a deliberate "obscuring" of their policies.  As she has failed to plead or show any particular – much less extraordinary – circumstances that led to her delayed filing of her discrimination claims, equitable tolling is not warranted in this case.  *See Rock v. Mustich*, No. 08 Civ. 4976 (CS)(PED), 2009 U.S. Dist. LEXIS 66900, at *7 (S.D.N.Y. Jul. 31, 2009) (denying *pro se* plaintiff's equitable tolling claim where plaintiff was unable to point to any representation that misled her).

As Plaintiff has not established any basis for overcoming the statute of limitations bar, I recommend that her Title VII and ADA claims against the TRS be dismissed under Rule 12(b)(6).

### 2.        Plaintiff's Due Process Claim Is Also Time-Barred.

The basis of Plaintiff's 14th Amendment due process claim against the TRS is not entirely clear, although, in her Amended Complaint, Plaintiff states that the TRS's benefits determination violated her due process rights to "personal liberty and privacy" (*see* Am. Compl., at ¶¶ 148, 157-59), and, at one point in her opposition papers, she argues that she has been deprived of a "property interest" (Pl. Opp. Mem. 1, at 8).  Regardless of the foundation of her due process claim, the TRS argues that, like Plaintiff's discrimination claims, this claim should be dismissed as time-barred.  (City Def. Mem., at 10-11.)

Due process claims are subject to a three-year statute of limitations in New York State. *See Owens v. Okure,* 488 U.S. 235, 249-50 (1989) (in 42 U.S.C. § 1983 actions, the statute of limitations is found in the state statute for personal injury actions); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *Dent v. City of New York*, No. 08 Civ. 2510 (DGT), 2009 U.S.

21

Dist. LEXIS 73563, at *2-3 (E.D.N.Y. Aug. 17, 2009).  The limitations period commences at the

time that plaintiff knows, or has reason to know, of the injury that is the basis of her claim.

*Brevot v. N.Y. City Dep't of Educ.*, No. 04 Civ. 7959 (GEL), 2007 U.S. Dist. LEXIS 16109, at

*15 (S.D.N.Y. Mar. 5, 2007) (citing *Jaghory*, 131 F.3d at 331).  Thus, Plaintiff's due process

claim would have accrued when she became aware of the TRS's calculation of her retirement

benefits, presumably no later than when she received the TRS's final benefits letter, which,

according to her, was dated August 18, 2003.  (*See* Am. Compl, at ¶ 230.)  As Plaintiff did not

assert her due process claim until 2008, more than four years after it accrued, the claim is plainly

untimely.

Plaintiff's only argument as to why this claim should not be dismissed is her assertion

that the Fair Pay Act should be read to extend her time to raise the claim.  (*See* Pl. Opp. Mem. 1,

at 7-8.)  As discussed above, however, it appears that the Fair Pay Act does not apply to monthly

pension distributions, and, thus, I recommend that Plaintiff's due process claim against the TRS

be dismissed under Rule 12(b)(6) as barred by the applicable statute of limitations.

### 3.  Plaintiff's Equal Pay Act Claim

Plaintiff claims that the TRS violated her rights under the Equal Pay Act, in that, by

refusing to grant her service credit for her maternity leave, it effectively paid her lower

retirement benefits than male retirees of the DOE.  (*See* Am. Compl., at ¶¶ 124-25.)  Along the

same lines, she also contends that the TRS awarded her unequal benefits by failing to grant her

service credit for the leaves of absence she took to care for an ill family member.  (*See id.* at

¶ 187.)  The TRS does not raise a statute-of-limitations defense to Plaintiff's Equal Pay Act

claim, but does argue that the claim should be dismissed nonetheless under Rule 12(b)(6), for

failure to state a claim.  (City Def. Mem., at 11-14.)  Specifically, the TRS contends that Plaintiff has not plausibly alleged that it provided different pension benefits to male retirees who were similarly situated (*id.* at 12), or that it used impermissible, non-gender-neutral criteria for determining whether to award pension credit for any of Plaintiff's unpaid leaves (*see id.*).

A plaintiff may establish a *prima facie* case of pay discrimination by showing that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.  *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (internal citation omitted); *see* 29 U.S.C. § 206(d)(1).  "Proof of the employer's discriminatory intent is not necessary for the plaintiff to prevail on her claim."  *Belfi*, at 136.

Plaintiff argues that she has adequately pleaded a *prima facie* case of discrimination because she has alleged (1) that the TRS granted a similarly situated male teacher, Edwin Altman service credit for a four-and-a-half-year leave of absence to care for a family member (Am. Compl., at ¶¶ 183-87), while refusing to grant her credit for the same type of leave (*see* Pl. Opp. Mem. 1., at 8-10; *see id.*, Ex 9 (Affidavit of Harold Zimmelman, sworn to Mar. 30, 2009)).  In addition, Plaintiff alleges that the TRS granted another male teacher, Jerome Goldman 18 years of service credit for years he spent working on activities that, like hers, were supposedly ineligible for credit.  (See Am. Compl., at ¶¶ 162-67, 169-81.)

Yet, while these allegations may suggest unequal treatment, Plaintiff has not plausibly alleged that the TRS was the entity that actually made the underlying determinations as to whether she should have been afforded service credit for her various leaves of absence.  The TRS explains in its papers that such determinations are made in the first instance by the retiree's

employer (here, the DOE), and that the TRS does not independently consider whether to grant service credit in the absence of an employer recommendation.  (*See* City Def. Mem., at 13; City Def. Reply Mem., at 8.)  This description of the DOE's and the TRS's respective roles is supported by relevant provisions of the New York City Administrative Code, of which this Court may take judicial notice on a motion to dismiss.  (*See supra* n.10.)  Under those provisions, the head of the department that employed the contributor must approve the service credit, for it to be granted by the retirement board.  *See* N.Y.C. Admin. Code § 13-505(c).  Because the TRS cannot, as a statutory matter, grant service credit without a recommendation from the DOE, and because Plaintiff does not claim that, in her case, the DOE made such a recommendation, which the TRS then rejected for sex-based reasons, Plaintiff's pleading against the TRS is insufficient to state a pay discrimination claim.  Accordingly, I recommend that Plaintiff's Equal Pay Act claim against the TRS be dismissed under Rule 12(b)(6).[12]

## B.      State-Law Claims

In addition to recommending the dismissal of all of Plaintiff's federal claims against the City Defendants, I further recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against these defendants, and instead dismiss

---

[12] Plaintiff arguably also attempts to plead that the City Defendants colluded with each other, as well as with the NYSID, to deny her retirement benefits.  (*See* Am. Compl., at ¶¶ 137, 188, 194, 321.)  To the extent that Plaintiff seeks to assert a conspiracy claim pursuant to 42 U.S.C. § 1985, her claim would fail, as she fails to "allege specific facts that could give rise to an inference of collusion or conspiracy" between the Defendants.  *Roffman v. City of New York*, No. 01 Civ. 8601 (AGS), 2002 U.S. Dist. LEXIS, at *18 (Dec. 9, 2002) (dismissing plaintiff's conspiracy claim where she failed to allege the requisite elements with particularity); *Ganthier v. North Shore Long Island Jewish Healthy Sys.*, 298 F. Supp. 2d 342, 349 (E.D.N.Y. 2004); *see also Boddie v. Schnieder*, 105 F. 3d 857, 862 (2d Cir. 1997) (holding that "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss") (internal citation omitted).

Plaintiff's state claims against them without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

*Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.").[13]

## III.   DEFENDANT NYSID'S MOTION TO DISMISS

### A.   Federal Claims

To the extent Plaintiff raises Title VII, ADA and Equal Pay Act claims against the NYSID, the NYSID has moved separately to dismiss those claims for lack of subject matter jurisdiction, primarily invoking the 11th Amendment, which bars federal suits against state agencies for monetary and declaratory relief.  (*See* NYSID's Memorandum of Law in Support of Motion to Dismiss, dated Jan. 30, 2009 ("NYSID Mem.") (Dkt. 11), at 2, 3-4.)  In response, Plaintiff argues that the 11th Amendment does not apply because the NYSID owes a fiduciary obligation to her as a TRS member.  (*See* Plaintiff's Memorandum of Law in Opposition of

---

[13] As I recommend that Plaintiff's pendent claims be dismissed under 28 U.S.C. § 1367(c)(3), I have not addressed the City Defendants' alternative arguments as to why, in any event, Plaintiff's state-law claims would be independently subject to dismissal.  (*See* City Def. Mem., at 15-21.)  It should be noted, however, that Plaintiff's state claims against the DOE and the TRS may well be barred by her apparent failure to file a notice of claim, by the applicable statutes of limitations, and/or by various substantive provisions of the state labor law, the NYCHRL, the NYSHRL, and the substantive elements of state common law.  (*See id.*)

Defendant NYSID's Motion to Dismiss the [Amended] Complaint, dated Mar. 30, 2009 ("Pl. Opp. Mem. 2"), attached to Pl. Notice of Mot., at 3.)

The 11th Amendment bars federal suits against state agencies, absent either (1) the state's unambiguous consent to such a suit; or (2) a valid and unambiguous abrogation of sovereign immunity by Congress. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Here, the 11th Amendment bars Plaintiff from asserting ADA claims against NYSID, as New York State has not consented to be sued on such claims, nor has Congress abrogated the state's sovereign immunity under the ADA. *See Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009) (stating that the 11th Amendment prohibits plaintiff from bringing claims of employment discrimination pursuant to the ADA); *Pennefeather v. N.Y. State Unified Court Sys.*, No. 09 Civ. 0098 (DAB), 2008 U.S. Dist. LEXIS 43460, at *5 (S.D.N.Y. June 3, 2008) (dismissing plaintiff's ADA claim for lack of subject matter jurisdiction because "Congress has not abrogated state sovereign immunity under Title I of the ADA").

While Congress *has* abrogated the state's immunity with respect to Title VII claims, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n.2 (1976) (Congress amended Title VII to include state and local governments as employers); *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 639 n.1 (2d. Cir. 1986) (noting "a state and its agencies have been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity"), Plaintiff's Title VII claims against the NYSID – as well as any claims she may be asserting under the Equal Pay Act – should also be dismissed because Plaintiff has not alleged an employment relationship with the NYSID, an essential element of such claims. *See Quitoriano v. Raff & Becker, LLP*, No. 09 Civ. 5507 (DC), 2009 U.S. Dist. LEXIS 122192, at *23-25 (S.D.N.Y. Dec. 29, 2009) (dismissing plaintiff's Title VII

and Equal Pay Act claims because she failed to allege plausible facts that defendant was her employer).

For these reasons, I recommend that the Court dismiss all of Plaintiff's federal claims against the NYSID pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or, to the extent the NYSID is not immune from suit on Plaintiff's claims, pursuant to Rule 12(b)(6) for failure to state a claim.[14]

### B.  State-Law Claims

Plaintiff's last claims are her state-law claims against the NYSID, by which she appears to allege that the NYSID wrongly confirmed TRS's retirement benefits calculation and improperly withheld documents that it should have produced to Plaintiff in response to her FOIL request.  (*See* Am. Compl., at ¶¶ 283; 294-97.)  As with her claims against the City Defendants, I recommend that the Court decline to exercise supplemental jurisdiction over these claims.  (*See* discussion *supra* at 24-25.)

It is all the more appropriate to defer to the state courts on these claims because of the NYSID's apparent 11th Amendment immunity to being sued on such claims in federal court, *see Pemrick v. Stracher*, No. 92 Civ. 959 (CLP), 2007 U.S. Dist. LEXIS 46958, at *18 (E.D.N.Y. June 28, 2007) ("federal courts are barred from entertaining claims under state law brought against a state, state agency or state department, unless the state has expressly consented to the suit"); *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541 (2002) ("the Eleventh

---

[14] Like the TRS, the NYSID also argues that any Title VII and ADA claims that Plaintiff is attempting to assert against it are also time-barred, given Plaintiff's failure to failure to file a timely complaint with the EEOC.  (*See* NYSID Mem., at 7-8.)  Although the Court need not reach the statute-of-limitations issue with respect to the NYSID, the NYSID's argument on this alternative point is persuasive, for the same reasons discussed above with respect to Plaintiff's Title VII and ADA claims against the TRS.

Amendment bars the adjudication of pendent state law claims against nonconsenting state

defendants in federal court") (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89,

(1984)), and because Plaintiff has made no showing that she has exhausted her state claims

against the NYSID through a New York State Article 78 proceeding, *see* N.Y. Ins. Law § 326

(stating that agency determinations may be challenged in an Article 78 proceeding); N.Y.

C.P.L.R. §§ 7801; *see also* N.Y. Pub. Off. Law §§ 84-89; *Simpson v. Town of Southampton*, No.

06 Civ. 6743, 2007 U.S. Dist. LEXIS 43649, at *7-8 (E.D.N.Y. June 15, 2007) (quoting *Schuloff

v. Fields*, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997) ("the appropriate vehicle for challenging

denials of access guaranteed by New York Freedom of Information law is a state court

proceeding pursuant to N.Y. C.P.L.R. Article 78 upon exhaustion of administrative remedies")).

Indeed, absent exhaustion, this Court would be "without jurisdiction to consider any claim

challenging the denial or the improper handling of a FOIL request." *See Simpson*, 2007 U.S.

Dist. LEXIS, at *25; *Yip v. Bd. Of Trs. of the State Univ. of N.Y.*, No. 03 Civ. 00959C (SR), 2004

U.S. Dist. LEXIS 28366, at *22-23 (W.D.N.Y. Sept. 29, 2004).

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the motions to dismiss the

Amended Complaint brought by both the City Defendants (Dkt. 9) an the NYSID (Dkt. 10) be

granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Deborah A. Batts, U.S.D.J., United States Courthouse, 500 Pearl Street, Room 2510, New York,

New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl

Street, Room 525, New York, New York, 10007. Any requests for an extension of time for

filing objections must be directed to Judge Batts. FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-*

*CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.*

*Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       March 8, 2010

                              SO ORDERED


                              DEBRA FREEMAN
                              United States Magistrate Judge

Copies to:

The Honorable Deborah A. Batts, U.S.D.J.

Ms. Joan Zimmelman, *pro se*
982 Westwood Rd.
Woodmere, NY 11598

Karen J. Seeman, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007

Elizabeth Forman, Esq.
Office of the Attorney General
New York State
120 Broadway
New York, NY 10271